979 So.2d 1135 (2008)
James GOLDSMITH and Monica Goldsmith, Appellants,
v.
Elaine C. BROCKHOUSE, et al., Appellees.
Nos. 3D07-1817, 3D07-1398.
District Court of Appeal of Florida, Third District.
April 16, 2008.
*1136 Jeffrey A. Sarrow, for appellants.
Richard J. Caldwell; Weiss Serota Helfman Pastoriza Cole & Boniske and Joseph H. Serota and Brooke A. Bloom, Miami, for appellees.
Before SUAREZ, CORTIÑAS, and SALTER, JJ.
SALTER, J.
These consolidated appeals are brought by the prospective purchasers, Mr. and Mrs. Goldsmith, of a residential property in Miami Beach, Florida. Their contract, commonly referred to as a "backup" contract, was made expressly subject to the rights of the parties to another, preexisting contract which ultimately closed. After the closing, Mr. and Mrs. Goldsmith filed a complaint seeking to enforce their contract, alleging that the preexisting contract had been terminated or breached. The circuit court granted final summary judgments in favor of the seller and the buyer under the first contract, and we affirm those rulings.
The first contract contained a "time is of the essence provision" and specific dates for the end of the inspection period and for closing. The backup contract executed a week later by the Goldsmiths and the seller contained this language under the printed caption "Back-up Contract":
This back-up Contract is subject to the termination of a prior executed contract between Seller and a third party for the sale of the Property. If the prior executed contract is terminated and Seller delivers written notice of the termination to Buyer before 5:00 p.m. on 9/27/04, this contingency will be removed and this back-up Contract will move into first position. If Buyer does not receive notice of the prior contract's termination by the above deadline, Buyer may cancel this back-up Contract at any time and Buyer's deposit will be refunded.
It is undisputed that the seller never delivered a written notice of termination of the preexisting contract to the Goldsmiths (or their real estate agent) by the date specified, or by any other date. Instead, the preexisting contract was extended and modified in writing several times, and ultimately that contract closed. The Goldsmiths did not obtain a covenant in their backup contract with the seller that prohibited the seller from granting any *1137 such extensions or modifications to the first buyer.
The Goldsmiths may not enforce the "time is of the essence" provision in the preexisting contract, because they were not third party beneficiaries of that contract. See Biscayne Inv. Group, Ltd. v. Guarantee Mgmt. Servs., Inc., 903 So.2d 251 (Fla. 3d DCA 2005). Nor may the Goldsmiths impose an implied covenant of good faith on the part of the seller and the first buyer in the absence of an enforceable contract with the seller prohibiting extensions or modifications to the seller's prior contract. Avatar Dev. Corp. v. De Pani Constr., Inc., 834 So.2d 873, 876 (Fla. 4th DCA 2002). The seller and first buyer remained free to amend their contract and to extend the date of closing as between themselves, without regard to the backup rights of the Goldsmiths, and despite the seller's and first buyer's initial agreement in their separate contract that time would be of the essence. Miami Child's World, Inc. v. City of Miami Beach, 688 So.2d 942 (Fla. 3d DCA 1997).
Mr. and Mrs. Goldsmith also argue that summary judgment was erroneously granted because material factual issues were presented by the affidavits in opposition to and deposition excerpts filed before the hearing. One affidavit was executed by the Goldsmiths' real estate agent and recounted a telephone conversation with the seller ten days before the deadline specified in the Goldsmiths' backup contract. During the telephone call, the agent said she was told that the buyer under the first contract had not timely posted the required deposits, that the Goldsmiths "had the deal," and that one of the two sellers had "terminated the first contract." Other evidence established that the buyer under the first contract had indeed raised problems with the seller before the end of the inspection period and therefore had not made a timely further deposit.
The trial court correctly concluded that these submissions did not raise a genuine issue regarding a material fact because the Goldsmiths' contract required the timely delivery to them of a written notice of termination of the preexisting contract, and there was no dispute that such a notice was not delivered. The Goldsmiths could not justifiably rely on the purported conversations and other occurrences, because the written notice of termination of the prior contract was required to elevate their backup contract into the primary and operative contract for sale. When (as here) the terms of the pertinent agreement are clear, lawful, and unambiguous, a court should simply enforce them as written. Edlund v. Seagull Townhomes Condo. Ass'n, 928 So.2d 405, 407 (Fla. 3d DCA 2006).
Because the Goldsmiths' backup contract never became an enforceable primary contract, we need not separately address their claim for specific performance.
Affirmed.